O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KIMBERLY PETROSKI, ) | Case No. CV 11-02569-MLG |
|        Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
|   v. ) | |
| MICHAEL J. ASTRUE, ) Commissioner of the Social ) Security Administration, ) | |
|        Defendant. ) | |

Plaintiff Kimberly Petroski seeks judicial review of the Commissioner's denial of her application for disability insurance benefits ("DIB") and supplemental security income benefits. For the reasons discussed below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

**I. BACKGROUND**

Plaintiff was born on August 17, 1961. (AR at 65). She has relevant work experience as an account manager and sales manager at a furniture company. (AR at 103). She filed an application for DIB as well as an application for supplemental security income benefits on August 10, 2007, alleging disability beginning July 24, 2006,

1

due to cat scratch disease and flu-like symptoms. (AR at 59, 67). The Social Security Administration denied Plaintiff's application initially on December 5, 2007. (AR at 59, 67-71).

An de novo hearing was held before Administrative Law Judge Dale A. Garwal (the "ALJ") on July 15, 2009. (AR at 59). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 59). The ALJ issued a decision on September 29, 2009, denying Plaintiff's application. (AR at 59-66). The ALJ found that although Plaintiff suffers from a history of chronic fatigue syndrome ("CFS") and is unable to perform her past relevant work, she has the residual functional capacity ("RFC") to perform a full range of sedentary work and therefore is able to perform jobs that exist in significant numbers in the national economy. (AR at 61-66). The Appeals Council denied review on February 14, 2011 (AR at 3-5).

Plaintiff commenced this action for judicial review on March 18, 2011. The parties filed a joint statement of disputed issues ("Joint Stipulation") on November 21, 2011. Plaintiff contends the ALJ failed to give appropriate weight to the opinion of her treating physician, improperly evaluated her credibility, and erred in finding that she can perform other work. (Joint Stipulation at 2, 16). Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings (Joint Stipulation at 18-19). The Defendant requests that the ALJ's decision be affirmed or, if the Court finds that the ALJ committed reversible error, that the Court remand for further administrative proceedings. (Joint Stipulation at 19).

//
//

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. DISCUSSION

**A. The ALJ Failed to Give Appropriate Weight to the Treating Physician's Opinion**

Plaintiff contends that the ALJ improperly rejected the work-related limitations assessed by her treating physician in finding that Plaintiff could perform a full range of sedentary work.

//

3

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830. If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests of independent clinical findings).

The record indicates that Plaintiff was seen by her treating physician, Gary J. Lawson, M.D., multiple times for various reasons between July 2006 and June 2008. (AR at 216-42). Dr. Lawson

diagnosed Plaintiff with CFS, and the treating records contain numerous notations of "chronic fatigue" and other symptoms. On July 14, 2009, Dr. Lawson completed a questionnaire stating that Plaintiff has CFS, is incapable of tolerating even a low stress job, can only sit or stand for thirty minutes continuously, and would likely be absent from work more than four times a month as a result of the impairments or treatment. (AR at 272).

    The ALJ rejected Dr. Lawson's opinion as to Plaintiff's RFC, but failed to state adequate reasons for doing so. (AR at 63-64). First, the ALJ took issue with the fact that the Plaintiff's symptoms were subjective, noting that "[a]pparently based purely on the claimant's subjective symptoms Dr. Lawson diagnosed chronic fatigue syndrome," and that "Dr. Lawson appears to have taken claimant's statements at face value." (AR at 63, 65). It is true that in general, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). However, rejecting Dr. Lawson's opinion on the premise that it was based on plaintiff's subjective complaints is improper in the context of a CFS case. *Reddick v. Chater*, 157 F.3d 715, 725–26 (9th Cir. 1998). As the Ninth Circuit explained, "[c]hronic fatigue is defined as '*self-reported persistent or relapsing fatigue lasting six or more consecutive*

months.'" Id. at 726 (emphasis in original) (quoting Centers for Disease Control, The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 Annals of Internal Medicine 954 (1994)). "Although CFS is accompanied by symptoms such as body aches, low-grade fevers, memory problems, headaches, and extended flu-like symptoms ... the presence of fatigue is necessarily self-reported. The final diagnosis is made 'by exclusion,' or ruling out other possible illnesses." *Reddick*, 157 F.3d at 726.

Of course "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citations omitted) (emphasis added). However, as will be discussed later in this opinion, the ALJ improperly discounted plaintiff's subjective complaints regarding the nature and extent of her functional limitations. Given the difficult nature of diagnosing CFS, to the extent that the ALJ's rejection of Dr. Lawson's opinion was based on a lack of objective medical evidence, that rejection was improper. *See Reddick*, 157 F.3d at 726; *see also Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 21 (1st Cir. 2003) (requiring objective documentation of CFS is unreasonable).

In rejecting Dr. Lawson's opinion, the ALJ also relied on the opinion of Lakshmi Sadasivan, M.D., an internal medicine consultant who evaluated Plaintiff. (AR at 63). Dr. Sadasivan reviewed only two items in Plaintiff's record: the infectious disease consultation report from October 28, 2005, and a report from her optometrist dated September 14, 2007. (AR at 208). She examined

6

Plaintiff on November 21, 2007 and did not find any significant physical or neurological problems (AR at 209-12). Based on her evaluation, Dr. Sadasivan concluded that Plaintiff would be able to lift or carry 50 pounds occasionally and 25 pounds frequently, could stand, walk, or sit for 6 hours in an eight-hour day, and would have no postural, manipulative, visual, communicative, or environmental limitations. (AR at 212).

The opinion of Dr. Sadasivan does not constitute a proper basis for rejecting Dr. Lawson's treating source opinion. It appears that Dr. Sadasivan was not apprised of Plaintiff's diagnosis of CFS or given access to any of the medical records documenting it. As noted, there are no objective signs or tests to confirm CFS, and thus it is unremarkable that Dr. Sadasivan's tests did not reveal significant abnormalities. Finally, given that the ALJ found that Plaintiff did suffer from CFS and disputed only the severity of its impact, it was not logical for him to rely on a medical evaluation that contained no mention of CFS to assess its severity. Thus, the ALJ's decision to credit the examining physician's assessment over the treating physician's was not supported by substantial evidence.

The ALJ also rejected Dr. Lawson's opinion because he found that Dr. Lawson had alleged that Plaintiff suffered from certain symptoms that were not consistently indicated in his treating records. (AR at 63). These symptoms included short-term memory or concentration impairment, sore throat, tender lymph nodes, muscle pain, joint pain, headaches, unrefreshing sleep, and post-

exertional malaise.[1] (AR at 63, 271). Nearly all of the treating records, however, contain a notation of chronic fatigue, which logically encompasses the symptoms underlying that diagnosis. (AR at 218-29). Additionally, many of the records mention equivalent symptoms such as "body aches," and given that the referenced symptoms were checked off on a standard form questionnaire, it is unsurprising that the terms used in the treating records differ from the language on the questionnaire. Moreover, many of the notations contained in the treating records are illegible. Thus, to the extent the ALJ questioned whether the relevant symptoms had been consistently observed and documented by Dr. Lawson, he should have inquired further. *See*, *e.g.*, *Smolen*, 80 F.3d at 1288.

Next, the ALJ found Dr. Lawson's contention that emotional factors did not contribute to Plaintiff's symptoms of CFS to be contradicted by the records stating that the Plaintiff had depression and anxiety. (AR at 63-64). Yet these positions are not inconsistent, as it is entirely possible that while Plaintiff did suffer from depression and anxiety, these conditions did not contribute to Plaintiff's CFS symptoms. To the extent the ALJ was concerned that there could be a contradiction or that the symptoms had a psychological overlay, he should have contacted Dr. Lawson to inquire further as set forth in 20 C.F.R. 404.1512(e)(1).

Finally, the ALJ observed "that all of the reports for state unemployment found that the claimant was capable of performing her

---

[1] These symptoms appear on the CFS Residual Functional Capacity Questionnaire, completed by Dr. Lawson on July 14, 2009, and are taken from Social Security Ruling 99-2p, which identifies the symptoms necessary for a diagnosis of CFS.

8

regular or customary work within one month." (AR at 64). However, this mischaracterizes the eight reports, which span the time period from December 2005 to April 2007. The reports contain only an *estimated* date for when the Plaintiff would be able to perform her customary work. While five of the reports have an estimated date of within one month, two of the reports have lengthier estimates. (AR at 235-41). Looking at the reports as a whole, it is clear that Plaintiff did not in fact improve within the estimated periods, but instead was consistently found to be unable to perform her customary work for the immediate future.

Accordingly, none of the ALJ's stated reasons for rejecting Dr. Lawson's opinion are supported by substantial evidence in the record.

**B. The ALJ Improperly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to properly evaluate her credibility in determining that she is capable of performing at least a full range of sedentary work. At the hearing, Plaintiff testified that she suffers from CFS, and that her symptoms began when she was scratched by a cat. (AR at 62). She said that she is constantly tired and sleeps 16 to 18 hours per day. She also experiences shaking, fevers, body aches, diarrhea, headaches, difficulty concentrating, and memory lapse. (AR at 62). She feels that on a bad day she can stand for about five minutes, sit for about 15 minutes, and lift no more than a couple of pounds, and that on a good day she could lift about 15 pounds. (AR at 62). Her symptoms vary and she occasionally has several good days in a month. She stated that despite her fatigue, she is able to perform at least occasional light meal preparation and can take care of her

pets, do light housework, drive a car, shop, take care of personal finances, and generally care for herself. (AR at 65).

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to symptoms are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[2]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d

---

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

10

at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. *Id.* (citations omitted).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR at 17). However, the ALJ rejected as not credible Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" to the extent they are inconsistent with the RFC allowing for a full range of sedentary work. (AR at 64). Because there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting this testimony.

The ALJ listed multiple reasons for rejecting Plaintiff's testimony. First, the ALJ found that the medical evidence submitted failed to document that Plaintiff has consistently experienced the symptoms generally associated with CFS as specified in Social Security Ruling 99-2p. (AR at 65). As discussed above, however, Dr. Lawson's records appear to document Plaintiff's complaints of

11

1 constant fatigue and related symptoms. (AR at 218-29).

2 Next, the ALJ stated that Plaintiff's "contention that her chronic fatigue and other symptoms began with a cat scratch was thoroughly discredited by the infectious disease specialist who briefly treated her." (AR at 65). However, this statement mischaracterizes the evidence. In a letter regarding his consultation with Plaintiff dated October 28, 2005, the specialist, Jon F. Willen, M.D., did note that cat-scratch disease was not documented serologically. (AR at 142). Nevertheless, in the same sentence he added the caveat that "there are false negative serologic studies." Additionally, in an assessment of Plaintiff bearing the same date, Dr. Willen noted that he "suspect[ed] an acute viral process; *most likely would be cat-scratch disease.*" (AR at 141) (emphasis added). After a reevaluation dated August 15, 2006, Dr. Willen further opined that Plaintiff had a form of CFS, "probably initiated by an infectious agent, most likely viral." (AR at 148).

18 Plaintiff did not need to demonstrate the cause of her disability in order to prevail on her disability claim. Rather, the issue of cause is relevant only to the extent that it bears on her credibility. Given the evidence suggesting Plaintiff had suffered a viral process that was likely cat-scratch disease and that a viral infectious agent initiated her CFS, Plaintiff's contention that a cat scratch caused her CFS does not provide a convincing reason for finding her testimony not credible. She was under no obligation to provide more definitive proof that a cat scratch in fact caused her CFS.

28 The ALJ also noted that while claimant has allergic rhinitis,

12

there is no indication that it currently affects her functioning, and that her contention that she had extremely poor vision was proven to be untrue by her optometrist. (AR at 65). As neither rhinitis nor poor vision form the basis for Plaintiff's disability claim, the ALJ's findings with respect to them are again relevant only as to the issue of her credibility. It does not appear that Plaintiff made any false or inconsistent statements with respect to her rhinitis, and neither the ALJ nor Defendant has pointed out any. Regarding her vision, the letter from her optometrist dated September 14, 2007 indicated that Plaintiff had several complications, including an astigmatism and glasses and contact lenses that were "over-corrected," but that these issues were "correctable." (AR at 195). These findings do not undermine Plaintiff's credibility; rather, they demonstrate that at the time she was seen by an optometrist she was indeed suffering from vision complications. Morever, there is no evidence that Plaintiff's vision issues were ever resolved.

Next, the ALJ discredited Plaintiff's symptom testimony based on her daily activities. A disability claimant's daily activities "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). Here, the ALJ found that "[a]lthough the claimant has alleged that she is extremely fatigued she has admitted to being able to perform at least occasional light meal preparation and that she can take care of her pets (including cats), do light housework, drive a car,

13

shop, take care of her own personal finances, and take care of her own self-care activities." (AR at 65). These limited activities, however, are not inconsistent with Plaintiff's testimony regarding her abilities and the fact that she is only awake between six and eight hours a day. Moreover, the record clarifies that the activities are extremely limited in duration and are generally only performed when the Plaintiff "feels up to it," and that she has regular help from her mother for tasks such as feeding the animals. (AR at 118-25). In short, the fact that Plaintiff is not "utterly incapacitated" does not prevent a finding of disability nor render her claim that she suffers from CFS not credible. *See Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (One does not need to be "utterly incapacitated" in order to be disabled).

The ALJ further stated that "[a]lthough there appears to be an emotional component to the claimant's chronic fatigue it is notable that she was never referred for any formal mental health care to explore this issue." (AR at 65). As discussed in the prior section, however, it is not clear that emotional factors were a component of Plaintiff's CFS, rather than a separate issue. Additionally, the fact that Plaintiff was not referred for any formal mental health care is not dispositive of whether Plaintiff suffered from mental health issues. *See, e.g., Regennitter v. Comm'r,* 166 F.3d 1294, 1299 (9th Cir. 1999) ("it is questionable practice to chastise one with a mental impairment for the exercise of poor judgement in seeking rehabilitation")(internal quotations omitted). The record contains other evidence demonstrating that Plaintiff suffered from mental health issues, including reports from her treating physician

noting that she suffered from depression, (AR at 222, 224, 236), and the fact that she was treated with Wellbutrin, an antidepressant (AR at 222, 225-27).

Finally, the ALJ found that "[d]espite the claimant's contention that she has to sleep 16 to 18 hours a day she has clearly failed to establish any medically determinable condition which would support this." (AR at 65). Yet the ALJ had already concluded that Plaintiff's CFS was a severe impairment and that "[t]he severity of this condition is established by the objective medical evidence, the opinions of the treating physicians and consultative examiners, and other evidence....". (AR at 61). In light of those conclusions, the ALJ was not entitled to discredit Plaintiff's testimony merely because objective evidence did not corroborate the severity of the symptoms. *Reddick*, 157 F.3d at 722; *Bunnell*, 947 F.2d at 345; *Light v. Soc. Sec. Admin*, 119 F.3d 789 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain...a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.") (internal citation omitted).

In sum, the principal reasons upon which the ALJ based his decision to reject Plaintiff's testimony were either legally improper or unsupported by substantial evidence in the record.

//
//
//
//
//

15

**IV. Conclusion**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this case, remand is appropriate to properly consider Dr. Lawson's opinion and Plaintiff's testimony, and to fully develop the record.[3]

Accordingly, the decision of the Commissioner is reversed; and this action is remanded for further proceedings consistent with this Memorandum Opinion.

Dated: December 8, 2011

_____
Marc L. Goldman
United States Magistrate Judge

---

[3] Because the record is not sufficiently developed to support a determination of disability without further proceedings, the Court will not consider the third issue raised by Plaintiff--whether the ALJ erred in finding the plaintiff can perform other work. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate). The Court recommends, however, that the ALJ consider all of Plaintiff's arguments when determining the merits of her case on remand. Testimony from a vocational expert may also be necessary in light of the evidence.